UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL SULLIVAN, KENNETH S. SALADIN, ZVI BODIE, ALAN J. MARCUS, KEVIN T. PATTON, LION DEN INC., and DANA LOEWY individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>- against -<br><br>OPENAI FOUNDATION (F/K/A OPENAI INC.), OPENAI GROUP PBC, OPENAI GP, LLC, OPENAI OPCO, LLC, OPENAI GLOBAL, LLC, OAI CORPORATION, OPENAI STARTUP FUND I LP, OPENAI STARTUP FUND GP I LLC, OPENAI STARTUP FUND MANAGEMENT LLC, and MICROSOFT CORPORATION,<br><br>Defendants. | Lead Case No. 1:25-md-03143<br><br>Member Case No. 1:26-cv-6966 |

**PLAINTIFFS MICHAEL SULLIVAN, KENNETH S. SALADIN, ZVI BODIE, ALAN J. MARCUS, KEVIN T. PATTON, LION DEN INC., AND DANA LOEWY'S MEMORANDUM OF LAW IN OPPOSITION TO THE ORDER TO SHOW CAUSE TO STAY PENDING RESOLUTION OF SUMMARY JUDGMENT MOTIONS**

# TABLE OF CONTENTS


TABLE OF CONTENTS ..... ii

TABLE OF AUTHORITIES ..... iii

PRELIMINARY STATEMENT ..... 1

FACTUAL BACKGROUND ..... 3

A. Textbook Plaintiffs and Similarly Situated Textbook Authors Have Discrete Interests from the MDL Books Plaintiffs and Other Non-Textbook Author Putative Class Members in the MDL ..... 4

B. Interim Lead Counsel in the MDL Did Not Adequately Represent Textbook Authors in *Bartz* and Has Not Developed Textbook-Specific Arguments Here ..... 5

ARGUMENT ..... 9

I. A Stay Is Not Warranted Because Textbook Plaintiffs Have an Interest in Proceeding Expeditiously and Would Suffer Prejudice if The Textbook Action Was Delayed ..... 9

II. The Limited Discovery and Motion Practice Textbook Plaintiffs Propose Will Not Unduly Prejudice Defendants ..... 11

III. A Stay of The Textbook Action Would Not Benefit the Court Because The Textbook Action Presents Distinct Issues from the MDL Books Plaintiffs' Action ..... 12

IV. A Stay Would Harm the Interests of Members of the Proposed Subclass, Who Would Remain Absent Class Members in Need of Independent Representation ..... 12

V. A Stay of The Textbook Action Would Not Be in the Public Interest Because The Textbook Action Presents Distinct Issues from the MDL ..... 14

CONCLUSION ..... 15

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591, 626 (1997) ........ 13

*Aukema v. Chesapeake Appalachia, LLC*,
839 F. Supp. 2d 555 (N.D.N.Y. 2012) ........ 12

*Bartz v. Anthropic PBC*,
4:24-cv-05417 (AMO) (N.D. Cal.)........ 5, 6, 7, 8, 10

*Bernstein v. Cengage Learning, Inc.*,
1:19-cv-07541 (ALC) (SLC) (S.D.N.Y. Nov. 8, 2024) ........ 13

*Burka v. New York City Transit Auth.*,
110 F.R.D. 660 (S.D.N.Y. 1986)........ 9, 13, 14

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
504 F.3d 229 (2d Cir. 2007) ........ 14

*Flynn v. McGraw Hill LLC*,
1:21-cv-00614 (LGS) (S.D.N.Y. Jan. 22, 2021) ........ 13

*Hachette Book Grp., Inc. v. Internet Archive*,
115 F.4th 163 (2d Cir. 2024) ........ 14

*In re OpenAI, Inc. Copyright Infringement Litig.*,
2025 WL 3635559 (S.D.N.Y. Dec. 15, 2025). ........ 9

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
827 F.3d 223 (2d Cir. 2016) ........ 10–11

*In re Zyprexa Prods. Liab. Litig.*,
424 F. Supp. 2d 488 (E.D.N.Y. 2006) ........ 11

*Khan v. New York City*,
757 F. Supp. 3d 327 (E.D.N.Y. 2024) ........ 11

*Rankine v. Levi Strauss & Co.*,
674 F. Supp. 3d 57 (S.D.N.Y. 2023) ........ 9, 11–12

*Short v. City of Rochester*,
747 F. Supp. 3d 594 (W.D.N.Y. 2024)........ 9

*Uniformed Pro. Fire Fighters Ass'n of Connecticut*,
2024 WL 4471356 (D. Conn. Oct 10, 2024) ........ 14–15

*Xchange Telecom Corp. v. Sprint Spectrum L.P.*,
2015 WL 6829049 (N.D.N.Y. Nov. 6, 2015) ........ 9, 12, 14

**Statutes**

Fed. R. Civ. P. 23(c)(5) ........ 10

Plaintiffs Michael Sullivan, Kenneth S. Saladin, Zvi Bodie, Alan J. Marcus, Kevin T. Patton, Lion Den Inc., and Dana Loewy individually and on behalf of all others similarly situated (collectively, "Textbook Plaintiffs"), by and through their counsel, Slarskey LLC, Archstone Law Group, P.C., and Gaw Poe LLP, submit this Memorandum of Law in Opposition to the Order to Show Cause for a Stay of This Action Pending the Resolution of Summary Judgment Motions in the other active cases in this multidistrict litigation. (ECF No. 14.)

## PRELIMINARY STATEMENT

Plaintiffs Michael Sullivan, Kenneth S. Saladin, Zvi Bodie, Alan J. Marcus, Kevin Patton, Lion Den Inc., and Dana Loewy (the "Textbook Plaintiffs") are textbook authors who filed this action (Case No. 1:26-v-06966-SHS (the "Textbook Action")) to protect their own interests and the interests of a proposed subclass of textbook authors ("Proposed Subclass") who are otherwise members of the putative Class in the "Class Cases" of the Consolidated MDL,[1] 1:25-md-03143 (the "MDL," brought by "MDL Books Plaintiffs"). (*See* Operative Complaint, MDL ECF No. 183, ¶ 294.) Textbook Plaintiffs filed the Textbook Action against OpenAI Foundation (F/K/A OpenAI Inc.), OpenAI Group PBC, OpenAI GP, LLC, OpenAI OpCo, LLC, OpenAI Global, LLC, OAI Corporation, OpenAI Startup Fund I LP, OpenAI Startup Fund GP I LLC, OpenAI Startup Fund Management LLC (collectively "OpenAI"), and Microsoft Corporation ("Microsoft") (all collectively, "Defendants")

As described *infra* and in the Textbook Action Complaint (Compl., ECF No. 1), Textbook Plaintiffs and similarly situated textbook authors have discrete interests from other class member authors (the majority of whom are apparently trade authors[2]), based on both the nature of their works

[1] MDL Member Cases No. 1:23-cv-08292 (SHS) (OTW) No. 1:23-cv-10211 (SHS) (OTW) No. 1:25-cv-03482 (SHS) (OTW)

[2] "Trade authors" are authors who create books for general consumption, *e.g.*, fiction and non-fiction works, as contrasted to "textbook authors" who write specialized academic and training materials used for subject-matter education.

and the nature of their relationships with publishers. Textbook author interests have not been adequately protected in this MDL, as evidenced by recent summary judgment submissions. Perhaps based on strategic or tactical choices made by MDL Books' Plaintiffs' counsel in the MDL, counsel have elected not to foreground damages theories that are uniquely felt by textbook authors and *critical* to establishing that OpenAI's illegal copying of textbook author works was not fair use. The Textbook Plaintiffs, through the Textbook Action, intend to seek certification as a class or subclass, and to develop evidence of damages as they are uniquely felt by textbook authors, including damages associated with market substitution, replacement, and price erosion as pertains to the textbook marketplace. These damages theories have been given short shrift in both this and other artificial intelligence ("AI") copyright infringement cases, presumably because they have less pertinence to trade authors, who constitute the majority of the class.

No stay should be entered for several reasons: *first*, Textbook Plaintiffs have an interest in proceeding expeditiously and would suffer prejudice if the Textbook Action is delayed. Specifically, while relying upon the appointment of interim class counsel who purportedly represent their interests, the recently filed summary judgment papers indicate that interim class counsel have not fully developed unique issues of market substitution and price erosion as pertain to textbook authors, as crucial to the "fourth factor" of fair use, *i.e.*, the effect on the textbook marketplace. The failure of counsel to articulate how textbook authors are uniquely harmed on this factor—despite prior court decisions in similar AI copyright infringement cases underscoring the importance of establishing the adverse impact on the market for infringed works—demonstrates the prejudice that textbook authors face from not having their own counsel to develop the record and protect their interests.

*Second*, Textbook Plaintiffs seek to pursue targeted, limited discovery (in addition to gaining access to the existing discovery record) focused primarily on developing the record in this area, as to the impact on the existing market for textbook works. Permitting Textbook Plaintiffs to proceed on a

limited discovery schedule will protect textbook authors' interests with little prejudice or undue burden to other parties. That is because, apparently, this issue has not been the subject of focused discovery but will need to be, for a fair adjudication of the Textbook Plaintiffs' claims, and the claims of similarly-situated authors.

*Third*, for the same reasons, a stay of the Textbook Action should be denied because it will not benefit the Court. As evidenced by recently-filed summary judgment papers, the Textbook Action will focus on issues that have not been thoroughly developed or litigated, and which need to be, for a fair and reliable adjudication of the Textbook Plaintiffs' rights, and the rights of similarly-situated textbook authors.

*Fourth*, no stay should issue because a stay would harm the interests of the members of the proposed subclass, who would remain as absent class members in need of independent representation to assure that the record is appropriately developed with respect to their interests, and to protect against intra-class conflicts of interest.

And *finally*, a stay would not be in the public interest because the Textbook Plaintiffs are presenting issues that are distinct from the issues presented in the MDL.

## <u>FACTUAL BACKGROUND</u>

Textbook Plaintiffs allege copyright and Digital Millennium Copyright Act violations arising from Defendants' unauthorized acquisition, reproduction, distribution, and use of copyrighted textbooks to develop and train OpenAI's generative AI models. (Compl. ¶¶ 1–6.) The Complaint defines, and was brought on behalf of, a putative class (or subclass) of textbook authors who are legal or beneficial owners of registered copyrights for the works used by OpenAI and Microsoft to train OpenAI's Generative AI Models. (*Id.* ¶ 124.) As alleged, Defendants illegally obtained copies of registered copyright works and improperly used those works to create their commercial AI business. (*Id.*)

### A. Textbook Plaintiffs and Similarly Situated Textbook Authors Have Discrete Interests from the MDL Books Plaintiffs and Other Non-Textbook Author Putative Class Members in the MDL

Textbook Plaintiffs are textbook authors who have authored multiple different textbooks, (*see* Compl. ¶¶ 13–34), and members of the putative class as defined in the Superseding Operative Complaint in the MDL. (Operative Complaint, MDL ECF No. 183, ¶ 294.) However, based on their identity as textbook authors, and the nature of textbooks relative to other types of works at issue, Textbook Plaintiffs and similarly-situated members of a Proposed Subclass of textbook authors have a discrete set of interests in the Textbook Action on top of (and at times different from) the MDL Books Plaintiffs, which do not include any textbook authors. Accordingly, Textbook Plaintiffs oppose a stay of the Textbook Action, and seek to protect the distinct interests of textbook authors who are members of the putative class.

Textbook authors operate in educational markets and under industry norms that differ materially from those of trade and scholarly authors, creating divergent interests and additional ways to show market harm and damages. (*See* Compl. ¶¶ 3, 100–102.) The markets for textbooks are more vulnerable than trade books to competition and market displacement from AI outputs. As noted above, textbook authors' legal and economic interests arise not just from Defendants' textual copying of the work, but also from Defendants' improper use of textbooks' pedagogical structure, sequencing, exposition, and educational presentation to *undercut the market* for those textbook works.

For example, Defendants in the MDL have deflected market substitution issues with respect to trade authors by indicating that the casual reader who wants to read an author's latest novel likely has no interest in an AI-generated substitute. (*See* Microsoft's Memorandum of Law in Support of Summary Judgment, MDL ECF No. 1690, at 25 ("no potential purchaser[] of Cleopatra or The Street Lawyer for their ordinary purposes [could] opt to acquire an LLM in preference to the book" (quotations and citation omitted)).) But a student who wants to learn Physics in what she thinks will

be "the easy way" will readily seek out a free LLM substitute. In addition, textbook publishing frequently involves multiple contributors across editions and formats and extensive supplemental materials, likely requiring different damages models relative to the types of works they create. Pursuing relief for the Proposed Subclass presents opportunities to develop additional damages theories and pursue distinct relief as compared to that which will be pursued for trade authors. (Compl. ¶ 4.) Interim Class Counsel, however, who may be concerned that highlighting the damages associated with the *textbook* market tends to draw attention to less powerful evidence pertaining to the majority of the *trade*-based class, may be forced to make strategic and tactical decisions that disadvantage the putative Textbook Class or Proposed Subclass.

Further, textbook contracts frequently require assignment or transfer of copyright to publishers for the convenience of administration, while reserving various-defined author royalty and participation rights. Pawlak Declaration ("Decl.") ¶ 2. This is contrasted to trade authors, who typically reserve their copyright, have fewer administrative issues necessitating complex commercial arrangements, and often include clauses that expressly state that recoveries from infringement suits will be split 50/50 between authors and publishers. *Id*. The result of these divergent commercial and legal arrangements not only creates an inherently adversarial relationship between textbook authors and their publishers, but ambiguity as to how infringement recoveries should be divided. As a result, there are intraclass conflicts between textbook publishers and authors over control, licensing, and allocation, which undercut the adequacy of the MDL Books Plaintiffs and their counsel to represent and maximize the recoveries of textbook authors, specifically.

### B. Interim Lead Counsel in the MDL Did Not Adequately Represent Textbook Authors in *Bartz* and Has Not Developed Textbook-Specific Arguments Here

In *Bartz v. Anthropic PBC*, Case No. 4:24-cv-05417 (AMO) (N.D. Cal.), Susman Godfrey L.L.P. ("Susman Godfrey") and Lieff Cabraser Heimann & Bernstein, LLP ("Lieff Cabraser") represented trade-book-author plaintiffs and served as co-lead class counsel. *See Bartz*, ECF No. 244,

at 31. Edelson PC and Oppenheim & Zebrak LLP ("Publishers' Coordinating Counsel") interceded on behalf of publishers just weeks before an initial mediation and preliminary settlement efforts that proceeded without separate textbook-author representation. *See* Pawlak Decl. ¶ 3. When the *Bartz* parties then presented a proposed settlement and plan of allocation to the court, the plan lacked clarity on how to split settlement proceeds between authors and publishers—bringing to light an intraclass conflict of interest, insofar as the class there (as proposed here) encompassed both authors and publishers connected to individual works. This prompted judicial concern about behind-the-scenes arrangements disadvantaging authors. As the court stated when considering preliminary approval of the initial proposed settlement in *Bartz*:

> I'm worried that you are working out, behind the scenes, between publishers some kind of a deal that you want to force down the throat of authors or—mainly the authors—and say you got to take X percent, even though their own agreements give them 100 percent. If they did. Maybe they don't. Maybe they're silent. Who knows?

*Bartz*, ECF No. 372, at 15:9–14; *see also* Pawlak Decl. ¶¶ 8–11. The court declined preliminary approval of the proposed settlement at that time. *See Bartz*, Minute Entry, ECF No. 371.

Textbook authors, through the Textbook and Academic Authors Association ("TAA"), were then belatedly brought in to participate, informally, in later rounds of mediation. Pawlak Decl. ¶ 3. Unfortunately, given the late date at which the TAA was added to represent textbook authors' interests (just a week before the deadline to submit a distribution plan), the absence of formal recognition of a subclass, and the outsized influence of Class Counsel and the Publishers' Coordinating Counsel, TAA was left with little ability to ensure that the *Bartz* settlement would be fair to textbook authors and provide an appropriate recovery relative to other class members.[3] The parties in *Bartz*, with Class Counsel's endorsement, agreed to a settlement process for "educational works" (*i.e.*, textbooks) that

[3] TAA also had two conflicted constituencies: *academic* authors, who were ultimately aligned with trade authors, and *textbook* authors, who (as described *infra*) had divergent interests. Here, textbook authors seek to be represented *individually*, to address their independent unique interests.

is substantially more onerous for textbook authors, and favorable to their publishers, as compared to the process that was agreed upon for trade authors (and the academic authors for whom TAA also advocates). Pawlak Decl. ¶ 8. Specifically, whereas trade and academic authors and their publishers agreed to a presumptive 50/50 split of proceeds, textbook authors were corralled into a complicated, poorly defined "meet-and-confer" process, where they have effectively been required to act as their own counsel to justify their entitlement to some portion of the settlement proceeds, and failing that, are referred to a special master to determine whether they should receive *any* of the settlement proceeds. Pawlak Decl. ¶¶ 8–9. Textbook authors were thus effectively required to accept or opt-out from the settlement without knowing *what if any amount* they would receive—or the process to which they would be subject, in the event that they could not reach an agreement with their publisher counterparties. Pawlak Decl. ¶ 9.

The *Bartz* settlement and distribution process has burdened textbook authors and benefit the textbook publishers, who are far fewer in number, better resourced, hold substantial aggregate interests in the recoveries, and are more sophisticated to position themselves for a greater share. Pawlak Decl. ¶ 11. Several of the largest publishers are now demanding as much as *85%* of the recoveries for individual works. Pawlak Decl. ¶ 10. Enabled by the structural advantage, at least one major educational publisher communicated inaccurate information to textbook authors during the claims process, which unfairly threatened to depress author shares, and which necessitated separate intervention efforts by the TAA to obtain remedial action. Pawlak Decl. ¶¶ 11, 13–14.

Here, as in *Bartz*, Susman Godfrey has been appointed Interim Lead Class Counsel to act on behalf of the putative class in the MDL. (Order, MDL ECF No. 83.) Although the Susman Godfrey team achieved a remarkable result in *Bartz*, intraclass conflicts substantially prejudiced textbook authors. That may be because for trade books, the evidence and arguments that would advantage *textbook authors* would be of less weight or less compelling as applied to the *majority of the class*,

such that the public record in *Bartz* does not reflect adequate development by Class Counsel of the arguments or evidence concerning the extent of harm to textbook authors, as noted above. *See, e.g.*, *Bartz*, Summary Judgment Hearing Transcript, ECF No. 208, at 71:4–12 (describing only in conclusory fashion the market saturation by “easy, cheap knock-offs” generated by Anthropic as “a type of harm”). Thus, in final settlement terms, the prejudice was manifest and confirmed: textbook authors were ultimately treated in a different, less favorable manner than the other authors and publishers encompassed by the class.

The prejudice carries over here: in the summary judgment arguments just recently filed in *this case* Interim Class Counsel does not articulate the unique concerns of textbook authors stated *supra* to which Textbook Plaintiffs give voice. (*See generally* MDL Books Plaintiffs’ Partial Summary Judgment Motion, MDL ECF No. 1881.) Counsel’s arguments regarding the threat to the market posed by the illegal copying and training of the GPT models speak only in generalities to the marketplace and say *nothing* about the unique interests and additional damages faced by textbook authors.

It is, presumably, only a matter of time before these same lawyers who suppressed the same arguments in *Bartz*, and did not adequately develop the record on the unique damages that textbook authors face, and then advanced a settlement that subordinated those very same authors, again proceed along the same lines. Pawlak Decl. ¶ 15. Textbook Plaintiffs filed the Textbook Action to seek separate recognition by the Court, and representation for textbook authors, and to assure that they are not similarly affected here: counsel for Textbook Plaintiffs and the Proposed Subclass intend to move to be appointed interim counsel for a subclass of textbook authors in the MDL. For that reason, Textbook Plaintiffs oppose a complete stay of the Textbook Action and, instead, respectfully request that while dispositive motion practice may be stayed, limited relevant discovery be allowed so that

Textbook Plaintiffs and their counsel may move to be appointed on an interim lead basis for a Proposed Subclass of textbook authors.

## ARGUMENT

The Court has discretion to stay this case. *See Rankine v. Levi Strauss & Co.*, 674 F. Supp. 3d 57, 68 (S.D.N.Y. 2023). Factors that the Court considers when determining in its discretion whether, as here, to stay a case pending the resolution of a related case or a case in an MDL include: "(1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interest of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest." *In re OpenAI, Inc. Copyright Infringement Litig.*, 2025 WL 3635559, at *9 (S.D.N.Y. Dec. 15, 2025). "In balancing these factors, the basic goal is to avoid prejudice to either party." *Xchange Telecom Corp. v. Sprint Spectrum L.P.*, 2015 WL 6829049, at *2 (N.D.N.Y. Nov. 6, 2015) (quotations and citation omitted). All of those factors weigh against stay of the Textbook Action, putting aside dispositive motion practice, which Textbook Plaintiffs agree should be stayed.

### I. A Stay Is Not Warranted Because Textbook Plaintiffs Have an Interest in Proceeding Expeditiously and Would Suffer Prejudice if The Textbook Action Was Delayed

The Court should deny a stay because Textbook Plaintiffs and the Proposed Subclass have an interest in proceeding expeditiously to protect their interests, and would suffer prejudice without the Proposed Subclass, with independent subclass representatives and counsel. Such prejudice is a harm distinct from the simple delay that a stay generally presents. *See Burka v. New York City Transit Auth.*, 110 F.R.D. 660, 668 (S.D.N.Y. 1986) (denying a stay so proposed subclasses could "develop[] evidence relevant to the class motion"); *Cf. Short v. City of Rochester*, 747 F. Supp. 3d 594, 601–02 (W.D.N.Y. 2024) (granting a stay because "delay alone is insufficient to prevent a stay" (quotations and citation omitted)).

Though the MDL Books Plaintiffs and Defendants are currently briefing summary judgment (*see* Proposed Stipulation and Order, MDL ECF No. 581), such briefing has not, and likely will not, encompass the arguments pertaining primarily to textbook authors and not to other class members. Indeed, although the MDL Books Plaintiffs have argued market harm because of market dilution and substitution, they did not develop arguments about price erosion and the unique substitution harm for textbook authors, or the unique impact on textbook authors, who appear *nowhere* in their papers. (MDL Books Plaintiffs' Partial Summary Judgment Motion, MDL ECF No. 1881, at 2, 23–25, 33–36; *see also id.* at 4 (noting that "[t]his motion addresses 194 of Plaintiffs' works . . . [that] span a wide range of genres, styles, subject matters, and sales volumes, including literary fiction, genre fiction, drama, history, and biography," a description that excludes educational works).)

Moreover, settlement can happen at any time, including during the pendency of summary-judgment motions. As noted above, Interim Lead Class Counsel here is the same as Class Counsel in *Bartz*, litigating essentially the same issues. It is reasonable to presume they will follow similar strategies as they pursued in *Bartz.* Textbook Plaintiffs' counsel intends to move for appointment as interim class counsel for a Proposed Subclass of textbook authors in the MDL to protect Textbook Plaintiffs and textbook authors' interests. *See* Fed. R. Civ. P. 23(c)(5) ("When appropriate, a class may be divided into subclasses that are each treated as a class under this rule."); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 827 F.3d 223, 231 (2d Cir. 2016) ("One common structural protection is division of the class into homogenous subclasses under Rule 23(c)[], with separate representation to eliminate conflicting interests of counsel." (quotations and citation omitted)). Without Textbook Plaintiffs' counsel's appointment as interim class counsel for a Proposed Subclass of textbook authors, the MDL Books Plaintiffs will have the ability (just as they did in *Bartz*) to pursue strategies, discovery, or settlement terms that inadequately protect textbook authors. *See, e.g.*, *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 827 F.3d at 237 (illustrating the perils, post-settlement, of allowing

inadequate subclass representation: "When one category [of class members are] targeted for [worse treatment] without credible justification it strongly suggests a lack of adequate representation for those class members who hold only claims in this category." (quotations and citation omitted)). A stay would assure this prejudice.

## II. The Limited Discovery and Motion Practice Textbook Plaintiffs Propose Will Not Unduly Prejudice Defendants

Limited discovery should be allowed so that Textbook Plaintiffs can develop a record around market harm and damages that are discrete from the issues on which the MDL Books Plaintiffs have already developed a factual record. Assuming Textbook Plaintiffs can obtain discovery already conducted in the MDL pursuant to the MDL Protective Order (Protective Order, MDL ECF No. 357, at 7), *see, e.g.*, *In re Zyprexa Prods. Liab. Litig.*, 424 F. Supp. 2d 488, 491 (E.D.N.Y. 2006) (noting that all litigants in an MDL "have access to materials obtained in pretrial discovery"), and that such discovery is adequate, Textbook Plaintiffs intend to pursue only limited additional discovery on issues pertinent to textbook authors, such as ownership and reversion under the named Textbook Plaintiffs' publishing agreements, the presence of textbook works in the Books1 and Books2 datasets, and evidence pertaining to impact on the textbook market. (*See* Compl. ¶¶ 59–63.) That limited discovery will enable Textbook Plaintiffs to assess the damages for their distinct theory of market harm so that their interests are adequately represented in any settlement discussions and future litigation. *See Khan v. New York City*, 757 F. Supp. 3d 327, 336 (E.D.N.Y. 2024) (denying a stay because plaintiff would suffer prejudice if he was unable to gather relevant evidence).

While Textbook Plaintiffs do not object to a stay of *dispositive motion practice* pending the adjudication of the summary judgment motions in the MDL, limited, nonduplicative discovery would not be unduly burdensome on Defendants and should be permitted. *See Rankine*, 674 F. Supp. 3d at 69 (denying stay where proposed discovery was limited to only certain discrete issues, such discovery would not "be unduly burdensome to Defendant," and "any prejudice to Defendant" would not

"outweigh the prejudice to Plaintiff caused by a delay in proceedings").

## III. A Stay of The Textbook Action Would Not Benefit the Court Because The Textbook Action Presents Distinct Issues from the MDL Books Plaintiffs' Action

When a stay is unlikely to lead to the preservation of judicial resources, courts generally find that a stay will not benefit the court and that the third factor weighs against granting a stay. *See Xchange Telecom Corp.*, 2015 WL 6829049, at *4; *see also Aukema v. Chesapeake Appalachia, LLC*, 839 F. Supp. 2d 555, 561 (N.D.N.Y. 2012) (denying a stay after finding that the lack of common issues and the non-binding effect of an arbitration on the matter in question did not promote judicial economy).

Here, a stay should be denied because Textbook Plaintiffs and the Proposed Subclass of textbook authors have distinct theories of market harm and damages from the MDL that will not fully be addressed during the adjudication of the summary judgment motion regarding the MDL Books Plaintiffs' claims, and a summary judgment motion ruling the MDL Books Plaintiffs' claims will not be binding on the Proposed Subclass of textbook authors. Accordingly, a stay would not conserve resources, but merely delay issues that will still need to be litigated later on. *See Aukema*, 839 F. Supp. 2d at 560–61 ("Plaintiffs would suffer prejudice by being forced to await the outcome of an arbitration they are not parties to and the outcome of which would not be binding on them."). Additionally, Textbook Plaintiffs agree to a stay of dispositive motion practice, which would preserve judicial resources. *See Xchange Telecom Corp*, 2015 WL 6829049, at *4 (noting that the preservation of judicial resources may be affected if motions were due in the action in question).

## IV. A Stay Would Harm the Interests of Members of the Proposed Subclass, Who Would Remain Absent Class Members in Need of Independent Representation

As noted above, a stay of the Textbook Action would prevent Textbook Plaintiffs and their counsel from moving to represent, at least on an interim basis, the Proposed Subclass of textbook authors—who would remain as absent class members if the Textbook Action is stayed. *See Amchem*

*Prods., Inc. v. Windsor*, 521 U.S. 591, 626, 629 (1997) (named plaintiffs agreed to class settlement that "limit[ed] defendants' liability" without adequate subclass representation and cautioning that: "[] Rule 23 [] must be . . . applied with the interests of absent class members in close view . . . ."). The lack of independent representation for the Proposed Class places its members at risk, particularly in light of the contentious history and extensive industry-wide litigation between textbook authors and their publishers. *See*, *e.g.*, *Bernstein v. Cengage Learning, Inc.*, Case No. 1:19-cv-07541 (ALC) (SLC) (S.D.N.Y. Nov. 8, 2024), ECF No. 323-2 (class action by textbook authors against publisher for unfair royalty-payment practices pursuant to the parties' publishing agreements); *Flynn v. McGraw Hill LLC*, Case No. 1:21-cv-00614 (LGS) (S.D.N.Y. Jan. 22, 2021) (same). Safeguards are needed now, while litigation is ongoing, for members of the Proposed Subclass to avoid a situation where "the settling parties . . . achieve[]a global compromise with no structural assurance of fair and adequate representation for the diverse groups and individuals affected." *Amchem*, 521 U.S. at 626.

Textbook authors require independent representation in pursuing their interests and negotiating the adversarial issues between textbook authors and publishers, which would be a logical outgrowth for not staying the Textbook Action, and permitting the undersigned to develop the textbook authors' unique interests. *See id.* at 626 (finding a disparity between different categories of class plaintiffs and affirming that named plaintiffs were improperly attempting to act "on behalf of a single giant class rather than on behalf of discrete subclasses"); *Burka*, 110 F.R.D. at 668 (denying a stay so proposed subclasses could "develop[] evidence relevant to the class motion"). While Interim Lead Class Counsel purport to represent the entirety of the class—publishers and authors alike—the MDL Books Plaintiffs cannot cure the inherent intraclass conflict that exists based on the different relationships between types of authors and their publishers, which necessarily leads to different strategic choices in developing damages theories, litigating the dispute, and ultimately seeking resolution and allocation of recoveries. *See Cent. States Se. & Sw. Areas Health & Welfare Fund v.*

*Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 246 (2d Cir. 2007) (finding subclasses necessary; conflicts among subclass groups "do[] not represent a simple disagreement over potential differences in the computation of damages," but "go[] to the very heart of the litigation").

If the Textbook Action were stayed, it would exacerbate the impact of that conflict of interest on Textbook Plaintiffs and the Proposed Subclass of textbook authors. *See id*. ("the antagonistic interests apparent in the class should be adequately and independently represented"); *Burka*, 110 F.R.D. at 668. Denying the stay will allow Textbook Plaintiffs and their counsel to develop the record and protect the distinct interests of the Proposed Subclass.

### V. A Stay of The Textbook Action Would Not Be in the Public Interest Because The Textbook Action Presents Distinct Issues from the MDL

A stay of these proceedings is also not in the public's interest. First, when a stay is unlikely to preserve judicial resources, courts find that a stay will not benefit the public, and that the fifth factor weighs against granting a stay. *See Xchange Telecom Corp.*, 2015 WL 6829049, at *4. As noted *supra*, Textbook Plaintiffs and the Proposed Subclass of textbook authors' distinct theories of market harm and damages from the MDL will not be addressed during the adjudication of the summary judgment motion and will necessarily be subsequently litigated, meaning that judicial resources will not be spared. And second, a stay is not in the public interest because textbook authors provide a public service by contributing to the public's academic and educational development, and an inability to protect their interests threatens long-term erosion of education systems. *See Hachette Book Grp., Inc. v. Internet Archive*, 115 F.4th 163, 195 (2d Cir. 2024) ("[T]he Copyright Act and its empowering constitutional authority reflect a considered judgment that 'the Progress of Science and useful Arts' is best promoted by laws that protect authors' original works and permit authors to set the terms of engagement . . . ."); *Uniformed Pro. Fire Fighters Ass'n of Connecticut*, 2024 WL 4471356, at *3 (D. Conn. Oct 10, 2024) ("Any delay in the resolution of their claims is not only not in the plaintiffs' interest, but also not in the public interest given the nature of the function the plaintiffs perform.").

Textbook Plaintiffs should not be delayed or prevented from adequately pursuing their claims, and the unique damages theories they seek to develop. The failure to develop those theories—and the "second class" treatment of textbook authors that therefore results—is not in the public interest, particularly given textbook authors' contributions to education and learning.

**CONCLUSION**

In light of the above, the Court should not stay the Textbook Action, excluding dispositive motions, pending the resolution of summary judgment motions in the other active cases in this MDL.

Dated: September 11, 2026
New York, New York

SLARSKEY LLC

By: ______________________
David Slarskey
Adam Hollander
Deepa Devanathan
Phillip Gasperetti
825 Third Avenue, 32nd Floor
New York, New York 10022
dslarskey@slarskey.com
ahollander@slarskey.com
ddevanathan@slarskey.com
pgasperetti@slarskey.com
Tel: (212) 658-0661

ARCHSTONE LAW GROUP, P.C.
Brenda Ulrich (*pro hac vice pending*)
Riverside Center
275 Grove Street, Suite 2-400
Newton, MA 02446
bulrich@archstonelaw.com
zrubin@archstonelaw.com
Tel: (781) 314-0100

GAW POE LLP
Christopher Wimmer (*pro hac vice pending*)
Randolph Gaw (*pro hac vice pending*)
One Embarcadero Suite 1200
San Francisco, CA 94111
cwimmer@gawpoe.com
rgaw@gawpoe.com
Tel: (415) 766-7451

*Counsel for Textbook Plaintiffs and the Proposed Subclass*